In the Matter of PARKCHESTER MANAGEMENT CORP., Appellant, v RENT STABILIZATION ASSOCIATION OF NEW YORK, INC., et al., Respondents, and PARKCHESTER TENANTS' ASSOCIATION, Intervenor-Respondent.

First Department, March 24, 1977

*Robert S. Fougner* of counsel *(McLaughlin & Fougner,* attorneys), for appellant.

*Abraham M. Lindenbaum* of counsel *(Lindenbaum & Young,* attorneys), for Rent Stabilization Association, respondent.

*William E. Rosen* of counsel *(Ellis S. Franke,* attorney), for New York City Conciliation and Appeals Board, respondent.

*Ronald E. Sternberg* of counsel *(L. Kevin Sheridan* with him on the brief, *W. Bernard Richland, Corporation Counsel),* for Housing and Development Administration, respondent.

*Kent Karlsson* of counsel *(Cammer & Karlsson,* attorneys), for intervenor-respondent.

*Per Curiam.* The leases in question were executed prior to May 29, 1974. They were renewal leases for a period of 31 months (extended by the Conciliation and Appeals Board [CAB] for an additional five-month period) and provided for graduated rent increases. CAB's determination required that during the extension period the rent be reduced to the "averaged rent" in the lease and that any renewal commencing thereafter be based upon such reduced averaged rent. It does not clearly appear that the six leases involved herein contravened section 35B of the Rent Stabilization Association Code. Moreover, the Rent Stabilization Association (RSA), which adopted the section, later sought unsuccessfully to amend it to make clear that it was not intended to apply to leases executed prior to May 29, 1974. As construed and applied, section 35B exceeds the powers granted. The graduated increases were found not to be unconscionable, and the total rents when averaged were not unconscionable. However, it was concluded that an unconscionable result would be reached if the final rent established in the leases were used as the basis for computing the renewal leases. In our view this conclusion regarding the projected increases is unsupportable. Such rent would not appear to be unreasonably high nor at variance with comparable fair market standards. The result reached below disregards the apparent intent of RSA and constitutes an arbitrary application of rental adjustments to tenants already in occupancy whose leases were executed prior to July 1, 1974, the effective date of the Emergency Tenant Protection Act of 1974 (L 1974, ch 576, § 4). (Emergency Tenant Protection Act, §§ 4; 6, subd a.)

Judgment entered in the Supreme Court, New York County, December 17, 1976 (HUGHES, J.) should be reversed on the law and the petition granted, without costs.

SILVERMAN, J. (dissenting). We would affirm the order of the

Supreme Court denying the application under article 78, and dismissing the petition in this case.

The Rent Stabilization Association of New York, Inc. (RSA), is a *quasi* voluntary association of landlords organized pursuant to New York City Rent Stabilization Law of 1969 (Local Laws, 1969, No. 16, of City of New York) to implement the self-regulatory system for stabilization of rents authorized by that law and by the Emergency Tenant Protection Act of 1974 (ETPA) (L 1974, ch 576). (See *8200 Realty Corp. v Lindsay,* 27 NY2d 124, 131 [1970].) Further, chapter 576 of the Laws of 1974 subjected to rent stabilization apartments in New York City previously decontrolled because of vacancies occurring after July 1, 1971. ETPA (§ 10, subd b) provides for implementation of ETPA by regulations adopted pursuant to the New York City Rent Stabilization Law of 1969. Such regulations required the concurrence of RSA and the New York City Housing and Development Administration (HDA).

ETPA was signed by the Governor on May 29, 1974; but pursuant to its local option provisions, the act did not take effect in New York City until July 1, 1974. To cover cases where rent increases took effect in the interim period, RSA, with the approval of HDA, adopted section 35B of its code of regulations giving to the New York City Conciliation and Appeals Board (CAB), whose members are appointed by the Mayor, power to adjust the "Initial Legal Registered Rent" (the basis of future rent increases), where the rent was increased during the period May 29, 1974 to June 30, 1974, upon a finding that the increase was unconscionable. We think this regulation is within the rule making powers of RSA and HDA in implementing the *quasi* voluntary system of rent stabilization. (See, e.g., *Johnson & Co. v Securities & Exch. Comm.,* 198 F2d 690 [1952], cert den 344 US 855 [1952]; *Stracquadanio v Department of Health,* 285 NY 93 [1941].) It bears a reasonable relation to the legislative scheme of rent stabilization. It is not irrational, arbitrary or capricious.

The result is not changed by the fact that after CAB made its ruling in these cases, RSA (apparently on petitioner's suggestion) proposed an amendment to the section which would have excluded leases executed before May 29, 1974. The amendment, like the original section, required the approval of HDA; HDA has not approved the amendment.

The power of CAB to adjust the rents must be "based on a finding that such increase is unconscionable." Such a finding

was made here. It rests within the expertise of the administrative agency.

Whether or not CAB would have had power to do so, in fact CAB did not disturb the stipulated rent for the lease period. It merely refused to permit the rent for the last year of the lease term (the highest rent of the term under this graduated lease) to form the basis for future rent increases under the Rent Stabilization Law after the expiration of the lease. It did this by fixing the rent for the five-month period following the expiration of the lease at a figure equal to the average rent over the life of the lease, and providing that that average rent should be the basis for future rent increases under the Rent Stabilization Law. CAB merely required that the rent for this five-month period and the basis for calculation of increases of rent after the expiration of the lease and the additional five-month period should be approximately 19% rather than 25% above the rent in effect at the time of the execution of the lease and the enactment of ETPA.

On all the facts we are not persuaded that CAB's determinations were irrational, arbitrary or capricious. Accordingly, these determinations are immune from judicial intervention.

STEVENS, P. J., CAPOZZOLI and MARKEWICH, JJ., concur in Per Curiam opinion; BIRNS and SILVERMAN, JJ., dissent in an opinion by SILVERMAN, J.

Judgment, Supreme Court, New York County, entered on December 17, 1976, reversed, on the law, without costs and without disbursements, the judgment vacated and the petition granted.